TABAK, MELLUSI & SHISHA LLP
29 Broadway
New York, New York 10006
Attorneys for Plaintiff
Tel: (212) 962-1590
Fax: (212) 385-0920

**14 CV 7006**

RECEIVED AUG 28 2014 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

VICKI L. GEORGE, Individually and as
The Executor and Personal Representative
of the Estate of
GREGORY J. GEORGE

      Plaintiff,

- against -

**MAERSK** LINE, LIMITED and
the MV MAERSK DENVER, *in rem*

      Defendants.
------------------------------X

**COMPLAINT**

**Plaintiff Demands
Trial by Jury**

  Plaintiff, VICKI L. GEORGE, Individually and in her capacity as the Personal Representative of the estate of GREGORY J. GEORGE, alleges upon information and belief:

1. Jurisdiction is predicated under 28 U.S.C. §1331 pursuant to the Jones Act 46 U.S.C. §10304, Death on the High Seas Act 46 U.S.C. §30302 ("DOSHA") and under 28 U.S.C. §1333 general maritime and admiralty law.

2. At all relevant times, Maersk Line, Limited ("Maersk"), was and is a Delaware limited liability corporation, licensed to and doing business in the State of New York, within the jurisdiction of this Court.

3. MV MAERSK DENVER is an American Flagged container ship Official Number is 1245545, her length is 941 feet, her breadth is 131 feet, her tonnages are 74,642 gross tons and 40,098 net tons.

4. GREGORY J. GEORGE ("decedent") is survived by his wife, VICKI L. GEORGE, and two issue: Jessica Ishida and Dustin George, both of the age of majority.

5. VICKI L. GEORGE is named as executor in decedent's will of April 2, 2008.

6. At all relevant times, Maersk was the owner of the MV MAERSK DENVER .

7. At all relevant times, Maersk operated the MV MAERSK DENVER.

8. At all relevant times, Maersk managed and controlled the MV MAERSK DENVER.

9. At all relevant times, Maersk hired the crew of the MV MAERSK DENVER.

10. At all relevant times, decedent was in the employ of Maersk in the capacity of a seaman and member of the crew of the MV MAERSK DENVER.

11. On or about August 2, 2013 MV MAERSK DENVER was in the Port of New York/ New Jersey when decedent joined the ship as her master, signed foreign articles and commenced employment as a seaman aboard the vessel.

12. The MAERSK DENVER had recently come out of the shipyard, having been reflagged as an American vessel. She was new to Maersk's fleet and her

**COMPLAINT**

officers and crew, including decedent, were new to the vessel and not familiar with her.

13. After decedent joined the MAERSK DENVER she went to two more ports in the United States then she went to ports in The Mediterranean, transited the Suez Canal and steamed toward Jabil-Ali.

14. Since the transit to Jabil-Ali required the MAERSK DENVER to enter areas of high pirate activity, the vessel picked up a "security team" in Malta.

15. MAERSK DENVER had recently been acquired by Maersk and placed in a shipyard for repairs. Her equipment and systems had not been properly tested, and repaired causing them to frequently trip off the vessel's alarms preventing decedent from getting sufficient sleep.

16. Despite the ship and crew being new and the frequent mechanical problems, decedent was not provided additional personnel to address these issues and his budget for authorizing overtime was reduced.

17. The requirements of getting familiar with the new ship, completing the paperwork required due to the extra security personnel, having to deal with alarms, having to prepare and transit pirate water, not having a crew that was familiar with the ship, the lack of sleep and other conditions on the vessel caused a great deal of stress and fatigue on decedent.

18. The stress and fatigue was so great that he contacted Maersk via email and advised them that he could not sleep due to a number of alarms going off and requested a transfer to another vessel at the end of the voyage.

**COMPLAINT**

19. On August 28, 2013, while in the Gulf Of Oman, plaintiff sustained a stroke as a result of the unreasonable amount of stress fatigue and other preexisting conditions.

20. Decedent's symptoms included loss of feeling in left side of face, left arm, left leg, drooping of left side of face and slurred speech.

21. MAERSK DENVER contacted their contracted medical advisory service Medical Factuality Associates in Washington, D.C., who advised that defendant had sustained a stroke.

22. It was imperative that decedent be evacuated from the ship as soon as possible and transported to a suitable facility capable of treating stroke victims.

23. Decedent should have been evacuated by helicopter to a suitable modern hospital in the region.

24. Maersk failed to arrange for a helicopter evacuation, rather they chose to steam towards Muscat Oman, which would take hours to reach; after which decedent would have to be lowered by crane to a launch transported to shore then transferred by ambulance to a hospital.

25. The delay in getting decedent to a hospital by choosing to steam towards Muscat Oman, rather than requesting a helicopter evacuation, resulted in decedent sustaining increased injuries which caused him to incur greater pain and suffering, and ultimately contributed to his death.

26. Maersk directly or through their agents chose to send decedent to the Al Nadha hospital in Muscat and then transfer him the next day to the Khoula hospital in Muscat.

**COMPLAINT**

27. Decedent did not select nor request to be treated by the Nadha or Khoula hospital nor their doctors. All decisions as to the selection of a shoreside medical facility were made by defendants or agents of defendants.

28. At all relevant times, the Nadha and Khoula hospitals and their physicians were acting as defendants' agents in executing defendants' obligation to provide medical treatment to its injured seaman.

29. Neither hospital were suited or able to provide adequate care; lacked proper medical equipment, suitable doctors, nurses and appropriate hygiene standards.

30. Maersk was negligent in not transporting decedent to a modern hospital in Dubai, or a better suited hospital in Oman.

31. Maersk was advised by plaintiff that the treatment decedent was receiving, was not adequate medical care; there were poor sanitary and hygiene conditions in the hospital, causing concern about decedent contracting an infection. The hospital nurses advised plaintiff that decedent should be transported to the United States for adequate medical care.

32. Maersk failed to timely authorize an air ambulance, due to cost, to transport decedent back to the United States where he could have obtained proper care.

33. In the alternative Maersk should have arranged for immediate transport to transfer decedent to a suitable hospital in Dubai.

34. Maersk initially attempted to repatriate decedent via a commercial airline, but did not obtain the necessary documents for clearance, to fly and mistakenly arranged for him to have a single seat on a commercial airliner, rather than

**COMPLAINT**

arrange room on the commercial flight for a stretcher, as was medically required; therefore that flight had to be delayed and ultimately cancelled.

35. The person(s) at Maersk who were making the arrangements for medical transportation, were not trained nor experienced in doing so, and were new to this position.

36. During the delay caused by not timely and properly arranging for transportation out of Oman decedent's condition worsened, and he developed air pockets in his brain and it was determined that it would be unsafe for him to fly.

37. Plaintiff then requested decedent be transported via ambulance to suitable hospital in Dubai.

38. The health care providers at Khoula hospital deviated from the required standard of care, by in part not refilling sanitizer stations, wiping down all the beds in the intensive care unit with the same, dirty cloth, nurses cleaning decedent's face with the same cloth they used to clean his rectal area, the healthcare providers did not use gloves, the bed and bed controller were dirty, the bandage by the insertion of the external ventricular drain was not properly monitored and changed, causing it to become, crusty and smell, failure to test for and take prophylactic measures to prevent deep vein thrombosis ("DVT"), and failure to prescribe physical therapy.

39. As a result of the above decedent developed a bacterial infection, causing ventriculitis, and left lower limb DVT, pulmonary embolisms, ventriculostomy failures, infections and pneumonia.

**COMPLAINT**

40. The development of the conditions listed above caused and contributed to decedent's pain and suffering and death.

41. On September 22, 2013 decedent was transported via ambulance to the Canadian Specialist Hospital in Dubai where he was treated until October 12, 2013 at which time he was transported from Dubai via air ambulance to the University of California San Diego Hospital of Medicine where he was treated for 3 weeks, and then transferred to Encinitas Rehabilitation Center.

42. His condition further declined, due to infections, renal failures and other medical complications.

43. He was admitted to Scripps Memorial Hospital Encinitas treated at the Scripps Encinitas Hospital on November 25, 2013 and died November 26, 2013, the cause of death was listed on his death certificate as respiratory arrest, brain edema, obstructive hydrocephalus and massive stroke.

### FIRST CAUSE OF ACTION JONES ACT

44. Plaintiff restates and realleges each and every allegation contained in paragraphs 1 to 43 with the same force and effect as though set forth in length.

45. Reduced manning and inexperienced crews, the increased work load, the excessive breakdowns and alarms going off due to MAERSK DENVER being placed in service prior to making all necessary repairs and debugging of vessel's systems, and other conditions caused excessive duties and duty time in direct violation of various Federal Statutes (including but not limited to 46

U.S.C. § 8104), this coupled with lack of sleep caused by these conditions caused excessive stress and fatigue.

46. The excessive stress and fatigue caused and /or contributed to decedent's stroke.

47. Defendant had an obligation to timely evacuate decedent off the vessel to an adequate healthcare facility.

48. Defendant should have arranged for a helicopter evacuation and not steamed for hours with a stroke victim.

49. Defendant chose a hospital that was not suitable and provided inadequate treatment.

50. Defendant was advised that decedent was not receiving adequate medical treatment in the Khoula hospital and failed to timely transfer him to a suitable hospital.

51. Defendant attempted to arrange for commercial transport of decedent out of Oman, rather than air ambulance.

52. The individual assigned to arrange air transportation was inexperienced and did not arrange for stretcher transportation which resulted in the flight being canceled.

53. The defendant did not adequately monitor the healthcare decedent was receiving in Oman to determine if it was inappropriate.

54. The defendant chose the healthcare providers in Oman and is vicariously liable for their malpractice, in their departure from the proper standards of care.

**COMPLAINT**

55. Defendants directly and or through their agents were negligent in failing to:

   a. provide decedent a safe place to work.

   b. Failure to promulgate and enforce rules and regulations to ensure the safety and health of the employees, while serving on the vessel.

   c. Placing the decedent in a position that he had to work under extreme stress and fatigue so as to not have tie up the ship.

   d. Failure to provide adequate number of crew and restricting overtime.

   e. Failure to ascertain prior similar incidents so as to take measures to prevent their re-occurrence.

   f. Failure to identify and eliminate known hazards that would place decedent under undue stress and lack of sleep as to endanger his health.

   g. Defendant violated the International Safety Management Code and failed to have a proper, adequate and safe Safety Management System Manual.

   h. Failed to have a proper procedure for helicopter emergency evacuation of injured seaman.

   i. Failed to provide timely evacuation of decedent off the vessel via helicopter once they diagnosed him with a stroke.

   j. Failed to make sure that decedent was placed in a medical facility, that could provide adequate care for decedent.

   k. Failed to timely transfer decedent to an appropriate medical facility once they became aware that he was not receiving adequate medical care at the Khoula Hospital.

**COMPLAINT**

    l. Failure to have an experienced individual make arrangement for decedent's air transportation out of Oman,

    m. Failure to initially authorize air ambulance to take decedent out of Oman.

    n. Defendant is liable for the malpractice of the healthcare providers in Oman, who deviated from the proper standard of medical care.

56. The negligent acts and omissions outlined in this complaint were a cause in decedent's illness, injuries, pain, suffering and death.

57. As a result of the wrongful death of decedent, plaintiff, individually and on behalf of decedent's issue, has and will sustain loss of support, loss of services, loss of inheritance, loss of nature and guidance and other pecuniary losses, in the amount to be proven at trial.

58. Plaintiff also brings a survival cause of action on behalf of decedent's estate for decedent's pre-death conscious pain and suffering in the amount to be proven in trial.

## SECOND CAUSE OF ACTION UNSEAWORTHINESS

59. Plaintiff restates and realleges each and every allegation contained paragraphs 1 to 58 with the same force and effect as though set forth in length

COMPLAINT

60. The acts and/or omissions stated above rendered the MV MAERSK DENVER unseaworthy, in particular failure to have proper systems and procedure in place to assure that the crew is not subject to excessive work hours, lack of sleep and stress that is detrimental to their health, having a crew that was not familiar with the vessel, having a vessel whose systems were such that they regularly failed causing alarms to go off depriving the master of sleep, failure to have a sufficient number of crew due to the conditions on the vessel and the crews inexperience on the vessel, failure to have a proper systems and procedure for helicopter evacuation of injured seamen who needed prompt medical attention.

61. The unseaworthy conditions outlined in this complaint were a substantial cause in decedent's illness, injuries, pain, suffering and death.

62. As a result of the wrongful death of decedent, plaintiff individually and on behalf of decedent's issue; has and will sustain loss of support, loss of services, loss of inheritance, loss of nature and guidance and other pecuniary losses, in the amount to be proven at trial.

63. Plaintiff also brings a survival cause of action on behalf of decedent's estate for decedent's pre-death conscious pain and suffering in the amount to be proven in trial.

**COMPLAINT**

**THIRD CAUSE OF ACTION DEATH ON THE HIGH SEAS**

64. Plaintiff restates and realleges each and every allegation contained paragraphs 1 to 63 with the same force and effect as though set forth in length

65. The wrongful acts, negligence and defaults, listed in this complaint, all occurred more than one marine league from the shores of any state or territory of the United States. As such plaintiff has a cause of action under DOHSA

66. As a result of, the wrongful death of decedent, plaintiff, individually and on behalf of decedent's issue has and will sustain loss of support, loss of services, loss of inheritance, loss of nature and guidance and other pecuniary losses, in the amount to be proven at trial.

67. Plaintiff also brings a survival cause of action on behalf of decedent's estate for decedent's pre-death conscious pain and suffering in the amount to be proven in trial.

**FOURTH CAUSE OF ACTION IN REM ACTION AGAINST THE M/V MAERSK DENVER**

68. Plaintiff restates and realleges each and every allegation contained paragraphs 1 to 67 with the same force and effect as though set forth in length.

69. The vessel MV MAERSK DENVER is presently located in or will be located in this District during the pendency of this suit, and is or will be subject to the jurisdiction of this Honorable Court.

70. By reason of the aforesaid, plaintiff has a maritime lien against said vessel for all damages arising from wrongful death and survival actions resulting from the vessel's unseaworthiness.

**WHEREFORE**, Plaintiff prays:

a) that judgment be entered against defendant *in personam*, on the first, second and third causes of action in the amount to be proven at trial, costs, pre-judgment and post judgment interest.

b) that judgment be entered against the MV MAERSK DENVER in *rem*, that process in due form of law, according to the Federal Rules of Civil Procedure and Supplemental Rules for Certain Admiralty and Maritime Claims, issue against said vessel her engines, tackle, apparel, etc., *in rem*; citing all persons having or claiming any interest therein to appear and answer all and singular, the matters aforesaid;

c) that plaintiff's lien be declared a valid maritime lien upon the whole of the vessel, her engines, apparel, appurtenances, tackles, etc., *in rem*; that after due proceedings be had, there be judgment in favor of plaintiff, and against the MV MAERSK DENVER, her engines, tackle, apparel, appurtenances, etc.; *in rem*, for an amount proved, together with interest, costs, attorneys' fees and other damages as may be shown at trial;

d) that the MV MAERSK DENVER be condemned and sold free and clear of all liens and encumbrances to satisfy the judgment herein, that plaintiff's maritime lien be recognized, enforced and paid by preference and priority over all other claimants and/or interveners herein.

**COMPLAINT**

e) That plaintiff be awarded costs, prejudgment and post judgment interest, and such other and further relief as justice may require.

Dated:   August 28, 2014

                                     TABAK, MELLUSI & SHISHA LLP
                                     Attorneys for Plaintiff

                     BY:  _____
                          JACOB SHISHA (JS 5452)
                          29 Broadway, Suite 2311
                          New York, NY 10006
                          (212) 962-1590

**COMPLAINT**